[No. S006001. Jan. 18, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
GEORGE LUTTENBERGER, Defendant and Respondent.

## COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye, Clifford K. Thompson, Jr., and Ronald S. Matthias, Deputy Attorneys General, for Plaintiff and Appellant.

John J. Meehan, District Attorney (Alameda), Thomas J. Orloff, William M. Baldwin, Assistant District Attorneys, Sandra L. Quist, Deputy District Attorney, Ronald A. Zumbrun, Anthony T. Caso, Kent S. Scheidegger, Charles L. Hobson, Kathryn Canlis, Acting District Attorney (Sacramento), and Albert C. Locher, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Patrick R. Murphy and Charles H. James, Public Defenders, under appointment by the Supreme Court, David C. Coleman III, Assistant Public Defender, and Sarah B. Wilner, Deputy Public Defender, for Defendant and Respondent.

Garcia & Schnayerson, Philip A. Schnayerson, Joseph E. Mockus, Rose & Arnold, Ronald Rose, John Wadsworth and Linda F. Robertson as Amici Curiae on behalf of Defendant and Respondent.

---

## OPINION

LUCAS, C. J.—In this case we determine the circumstances under which a criminal defendant may obtain discovery of information in police possession regarding a confidential informant, for purposes of challenging the accuracy of statements made in an affidavit in support of a search warrant. ██ ██ ██ Among other issues, we are asked to decide whether the discovery procedure approved in *People* v. *Rivas* (1985) 170 Cal.App.3d 312 [216 Cal.Rptr. 477] conflicts with article I, section 28, subdivision (d) of the California Constitution, which controls admissibility of evidence in criminal proceedings.[1]

---

[1] Passed by the voters in June 1982 as part of Proposition 8, this subdivision, entitled "Right to Truth-in-Evidence," states in relevant part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post convic-

As discussed in detail below, *Rivas, supra,* 170 Cal.App.3d 312, held that a criminal defendant was entitled to discovery of police records and other documents concerning the background of a confidential informant on whose information a search warrant was issued, provided the documents were first screened by the court in camera to protect the informant's confidentiality. We conclude that section 28(d) itself does not limit a defendant's discovery rights in this context, but that the right to discovery created by *Rivas* is inappropriately broad, and should be circumscribed. We adopt a preliminary showing standard, which a defendant must satisfy to obtain in camera examination and discovery of information regarding police informants. Defendant did not make a showing sufficient to justify discovery in this case, and we therefore reverse the Court of Appeal's decision affirming the order dismissing the information for failure to comply with *Rivas.*

## I. FACTS

A warrant was issued for the search of defendant's home, based on a police officer's affidavit stating that a confidential informant had provided the officer with information indicating defendant was "dealing Methamphetamine." The affidavit described the officer's corroborative investigation, which confirmed defendant's address and his lack of telephone or utility service. The affiant stated the informant had recently given him "reliable" information, but did not provide further details regarding the informant' background or reliability. He stated he wished to keep the informant's identity confidential because disclosure would endanger the informant and impair his "future usefulness."

The search uncovered methamphetamine and marijuana, drug paraphernalia, $880 in cash, and a loaded handgun. Defendant was arrested and charged with possession of methamphetamine and marijuana for sale (Health & Saf. Code, §§ 11378, 11359), with the allegation he was armed with a firearm (Pen. Code, § 12022, subd.(a)).

Before the preliminary hearing, defendant moved for discovery under *Rivas, supra,* 170 Cal.App.3d 312, seeking the court's "in-camera review of any information disclosed or discoverable . . . as to the informant's past experiences with dangerous drugs, any police reports of incidents [filed] against [informant], pay vouchers, if there were any, for [informant's] ser-

---

tion motions and hearings . . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103." We refer hereafter to this provision as section 28(d).

Section 28(d) applies in cases in which the charged crime was committed after Proposition 8's effective date (June 9, 1982). (*People v. Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].)

vices to the police department, [and] any [promises or] representations . . . that were made to him." The defense further asked the court to "examine whether the informant has some relationship with this case that would make him or her unreliable."

Defendant did not contend the affidavit was facially insufficient to establish probable cause for issuing a search warrant. Instead, he sought information to support a "sub-facial" challenge by controverting the veracity of statements made in the affidavit. Defendant did not at tha time seek disclosure of the informant's identity.[2] The magistrate denied the discovery motion.

The sole witness at defendant's preliminary hearing was the police officer who had conducted the search. He testified regarding the search and the evidence seized. The officer who signed the search warrant affidavit did not testify. The magistrate found the evidence sufficient to support all charges, and an information was filed. In superior court, defendant pleaded not guilty and denied the firearm-enhancement allegation.

Defendant next made a pretrial motion to dismiss the information (Pen. Code, § 995), arguing, among other points, that the lower court had erred in failing to grant his *Rivas* motion. The superior court dismissed the information, based solely on "the failure of the magistrate to conduct an in camera hearing pursuant to the requirements of [*Rivas, supra,* 170 Cal.App.3d 312]." The Court of Appeal affirmed.

In their petition for review, the People ask us to determine whether the in camera hearing and discovery procedure authorized in *Rivas, supra,* 170 Cal.App.3d 312, violates section 28(d) because it is inconsistent with the federal "substantial preliminary showing" requirement for subfacial search warrant challenges, as set forth in *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]. The decisions of the Courts of Appeal are in conflict on this point. The People also urge this court, should we conclude that section 28(d) does not prohibit *Rivas*-type discovery procedures, to announce what preliminary showing a defendant must make in order to justify in camera examination and discovery of material regarding confidential police informants.

---

[2] Although defendant's written motion requested disclosure of the informant's identity, at the hearing the defense stated it was not requesting disclosure, pending the outcome of the motion for in camera examination and discovery. Defendant later submitted a second pretrial motion in municipal court, this time requesting both "information regarding the [confidential informant]'s past experience as an informer" and "disclosure of the identity" of the informant. This motion was also denied.

## II. Discussion

### A. *Legal background.*

#### 1. *Franks v. Delaware: Constitutional right to challenge the veracity of a warrant affidavit*

Section 28(d) limits the exclusion of relevant evidence in criminal proceedings. (See fn. 1, *ante*.) Its enactment abrogated our state's judicially created exclusionary rule and mandated the "admission of relevant evidence, even if unlawfully seized, to the extent admission of the evidence is permitted by the United States Constitution." (*In re Lance W.* (1985) 37 Cal.3d 873, 887-888 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus, California courts now must follow federal exclusionary principles in resolving motions to suppress evidence in criminal trials. The effect of section 28(d) on the *Rivas* (*supra,* 170 Cal.App.3d 312) pretrial discovery procedure sought in this case, however, is not immediately obvious. We begin by discussing *Franks, supra,* 438 U.S. 154, as background for our decision here.

In *Franks*, the United States Supreme Court held a defendant has a limited right, under the Fourth Amendment of the United States Constitution, to challenge the validity of a search warrant by controverting the factual allegations made in the affidavit in support of the warrant. As the court stated, "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning," by allowing searches based on false allegations by police officers to go unchallenged and unremedied. (438 U.S. at p. 168 [57 L.Ed.2d at p. 680].) The court therefore rejected an absolute ban on such challenges. It recognized, however, several "competing values" that led it to impose limitations on the right to challenge the validity of a search warrant by impeaching an affiant's veracity. (*Id.,* at pp. 165-167 [57 L.Ed.2d at pp. 678-679].)

The high court acknowledged that allowing a challenge to a facially valid search warrant, and applying the exclusionary rule in this situation, would impose a burden on society by preventing some criminal convictions. (438 U.S. at p. 166 [57 L.Ed.2d at pp. 678-679].) It recognized that requiring postsearch evidentiary hearings on "the collateral question as to whether there had been official misconduct in the drafting of the affidavit" would create an additional administrative burden for trial courts. (*Id.,* at p. 167 [57 L.Ed.2d at p. 679].) It noted, further, that the accused is given some measure of protection from improper searches by the requirements that warrants be supported by sworn affidavits and issued only after a magistrate's independent evaluation of probable cause. (*Id.,* at pp. 166-167 [57 L.Ed.2d at p. 679].)

The court concluded, however, that neither the issuing magistrate's pre-search scrutiny of the affidavit, nor alternative sanctions such as a prosecution for perjury, would always suffice to prevent police perjury or recklessness in seeking search warrants. (438 U.S. at p. 169 [57 L.Ed.2d at pp. 680-681].) Balancing the competing considerations, it held a defendant is constitutionally entitled to a postsearch evidentiary hearing on the veracity of the warrant affidavit, but only after he first makes a "substantial preliminary showing" that (1) the affidavit included a false statement made "knowingly and intentionally, or with reckless disregard for the truth," and (2) "the allegedly false statement is necessary to the finding of probable cause." (*Id.*, at pp. 155-156 [57 L.Ed.2d at p. 672].) Exclusion of evidence seized under the warrant is required if (1) at the evidentiary hearing "the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence," and (2) "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." (*Id.*, at p. 156 [57 L.Ed.2d at p. 672].)

The *Franks* court emphasized it was announcing a rule of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." (438 U.S. at p. 167 [57 L.Ed.2d at p. 679].) It cautioned, "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." (*Id.*, at p. 171 [57 L.Ed.2d at p. 682].) Therefore, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." (*Ibid.*)

The court noted that the requirement of "a suitable preliminary proffer of material falsity" would prevent diminution of "the importance and solemnity of the warrant—issuing process." (438 U.S. at p. 169 [57 L.Ed.2d at p. 681].) It continued, "Nor, if a sensible threshold showing is required and sensible substantive requirements for suppression are maintained, need there be any new large-scale commitment of judicial resources; many claims will wash out at an early stage . . . . The requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." (*Id.*, at p. 170 [57 L.Ed.2d at p. 681].)

The search warrant affidavit at issue in *Franks* differed from that in the present case in a crucial respect: it relied not on information from a confidential informant, but on statements attributed to two named sources, whom the defendant had been able to contact. He alleged that the two informants would testify that they had not spoken with the affiant officer, and that although they may have talked with another officer, their statements were "somewhat different" from those attributed to them in the affidavit. On these facts, the high court did not need to, and did not, reach the proper procedure or preliminary showing required in cases involving confidential informants. The court expressly reserved "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once a substantial preliminary showing of falsity has been made." (438 U.S. at p. 170 [57 L.Ed.2d at p. 681].) It noted only that due process "did not require the State to expose an informant's identity routinely, upon a defendant's mere demand, when there was ample evidence in the probable-cause hearing to show that the informant was reliable and his information credible." (*Ibid.*) The court also pointed out that it was permitting impeachment of only the affiant, not of any nongovernmental informant. (*Id.*, at p. 171 [57 L.Ed.2d at p. 682].)

Finally, the *Franks* court stated that "the framing of suitable rules to govern proffers is a matter properly left to the States." (438 U.S. at p. 172 [57 L.Ed.2d at p. 682].) Accordingly, it remanded the matter to the state court to determine the sufficiency of the defendant's proffer.

### 2. *Section 28(d) requires California courts to follow Franks in applying the exclusionary rule*

Before the adoption of section 28(d), we held that the California Constitution and statutes granted defendants broader rights to challenge a facially valid search warrant, and to seek suppression of evidence based on false statements of an affidavit, than did the Fourth Amendment as explained in *Franks, supra,* 438 U.S. 154. (*People* v. *Kurland* (1980) 28 Cal.3d 376, 383, fn. 2 [168 Cal.Rptr. 667, 618 P.2d 213]; *People* v. *Cook* (1978) 22 Cal.3d 67, 88 [148 Cal.Rptr. 605, 583 P.2d 130]; see *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234].) ■ Under section 28(d), however, we now apply federal standards to decide whether relevant evidence seized pursuant to a search warrant must be excluded. (*Lance W., supra,* 37 Cal.3d 873, 886-887; see, e.g., *People* v. *Truer* (1985) 168 Cal.App.3d 437 [214 Cal.Rptr. 869] [applying *Franks* rather than prior California law and finding denial of suppression motion proper when intentional omissions and falsehoods not material]; *People* v. *Luevano* (1985) 167 Cal.App.3d 1123 [213 Cal.Rptr. 764] [upholding search warrant, under *Franks,* when intentional misstatement in affidavit not material].)

The People argue that section 28(d) requires state courts not only to follow *Franks* when ruling on suppression motions, but also to apply the *Franks* "substantial preliminary showing" standard for convening veracity hearings, and that the courts "should not be permitted to derogate that mandate by convening an earlier hearing and labeling it 'discovery.'" Defendant counters that the state-conferred right to an in camera examination and discovery of police files under *Rivas* conflicts with neither *Franks* nor section 28(d).

3. *People* v. *Rivas: Right to discovery of information concerning confidential informant*

In *People* v. *Rivas, supra,* 170 Cal.App.3d 312, the defendant was charged with possession of cocaine for sale, based on evidence obtained in a search of his residence pursuant to a warrant. The warrant affidavit relied on information from a confidential informant. In order to challenge the accuracy of the affidavit, the defendant moved for discovery of numerous items, including police reports regarding the informant. He asserted he was not attempting to discover the informant's identity, but only to gain access to documents he believed might undermine representations in the affidavit stating the informant previously had been a reliable source of information. To assure he did not see any material revealing the informant's identity, the defendant proposed that the court examine the materials in camera and excise any identifying information before ordering production to him.

The magistrate in *Rivas* denied the motion on the ground the discovery requests constituted an improper attempt to learn the informant's identity. At the preliminary hearing, the magistrate prohibited defense counsel from questioning the affiant about his reasons for asserting the informant was reliable, or any matter "that goes to the propriety of the warrant other than the alleged insufficiency of the affidavit in and of itself." (170 Cal.App.3d at p. 318, fn. 3.) The magistrate stated that because the defendant had not made a prima facie showing of inaccuracy or omission in the search warrant affidavit, he could challenge only the facial adequacy of the warrant.

The superior court in *Rivas* subsequently denied the defendant's motion to dismiss, finding he was not entitled to discovery concerning the facts alleged in the affidavit without first showing the affidavit contained inaccuracies. The Court of Appeal reversed the ensuing conviction and ordered the information set aside.

On appeal, the *Rivas* defendant acknowledged he needed to make a preliminary showing of the affidavit's inaccuracy under both *Franks, supra,* 438 U.S. 154, and *Theodor, supra,* 8 Cal.3d 77, before he could obtain a hearing

on a motion to challenge the accuracy of the search warrant affidavit.[3] (170 Cal.App.3d at pp. 318, 319.) He argued that the requested discovery was justified because without it he had no way to obtain the information he needed to make the required prima facie showing. The Court of Appeal defined the problem as follows: "[U]nder both the state and federal standards, a defendant's opportunity to secure a hearing rests in large part upon his ability to discover whether the affidavit contains inaccuracies, in order that he may make a sufficient preliminary showing of same. It is his right to adequate discovery with which we are concerned in this case." (170 Cal.App.3d at p. 320.)

The *Rivas* court recognized the importance of protecting the identity of confidential informants. (170 Cal.App.3d at p. 321.) ■ Moreover, "[i]t is well settled that defendant has no right to discover an informant's identity solely to attack a facially valid search warrant affidavit. That right arises only where defendant shows a reasonable possibility that informant is a witness to guilt or innocence." (*Kurland, supra,* 28 Cal.3d at p. 387, fn. 5; see Evid. Code, §§ 1041, 1042, subd. (b); *McCray* v. *Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056].)

The *Rivas* court also recognized that the defense has an important competing interest in discovery, and concluded, "When the challenge is to the accuracy of the affiant's statements concerning the informant, the competing interests of the government and defendant can be accommodated to avoid disclosure of identity. The customary solution is an *in camera* review by the court." (*Rivas, supra,* 170 Cal.App.3d at p. 321.) The court held the "defendant was entitled to discovery of the disputed items, provided that the documents are prescreened *in camera* by the lower court so as to protect the confidentiality of the informant's identity." (*Id.,* at p. 322.)

The *Rivas* court did not require the defendant to make a *Franks*-type threshold showing before the in camera screening. It did not specify what showing was needed, stating only that the defendant could rely on "the traditional discovery means employed in California courts." (170 Cal.App.3d at p. 321.) Nonetheless, it warned that the in camera hearing was not required "as a matter of routine," although noting " 'it should not

---

[3] As stated in *Kurland, supra,* 28 Cal.3d at page 390: "If the defense states 'with some specificity' its reasons for believing that material facts were omitted, it may try to show such omissions and their materiality." Defendant in the present case did not attempt to make a preliminary showing under either *Franks* or *Kurland,* arguing instead, "It is impossible for defendant to assert that something about the affidavit is suspect where defendant is provided with no information on which to base such an assertion." Therefore, for purposes of resolving the issue before us, i.e., the propriety of *Rivas* discovery, we need not distinguish between the preliminary showing required by *Franks* and that required under *Kurland.* We consider here only the showing required to obtain discovery.

take much to prompt the suppression hearing judge to order such a hearing. If the defendant "has fairly put in issue" the existence of the informant, whether the officer's report of the informer's prior reliability is truthful, or whether the officer's recitation of what the informant told him is correct, then an in camera hearing should be held. Nothing less will ensure that the protections of the Fourth Amendment have not been circumvented.'" (*Id.*, at p. 322 [quoting 1 LaFave, Search and Seizure (1978) § 3.3, pp. 585-586 (see now *id.* (2d ed. 1987) § 3.3(g), p. 711)].)

Although declining to be more specific, the *Rivas* court, in ordering the trial court to set aside the information, necessarily found that the preliminary showing made by the defendant in that case was sufficient to justify the requested discovery. It appears that the *Rivas* defendant made no showing whatsoever regarding the possible falsity of the affidavit, but simply asserted he needed the requested materials to exercise his right to challenge the veracity of the warrant affidavit. Thus, while cautioning against routinely granting in camera examination and discovery in all cases involving confidential informants, the *Rivas* court apparently approved such hearings and discovery without any requirement of a preliminary showing. Indeed, the court stated, "Obviously, if the identity of the informant is unknown to defense counsel, and if the affidavit is a bare bones one in conclusionary terms, defendant can do little to challenge the informant's reliability except in similar conclusionary terms." (170 Cal.App.3d at p. 321.) The court did not discuss the impact, if any, of section 28(d) on its analysis.

### 4. *Conflicting views of Rivas discovery right*

The *Rivas* ruling was rejected by the Court of Appeal in *People* v. *Crabb* (1987) 191 Cal.App.3d 390 [236 Cal.Rptr. 385]. In *Crabb*, the defendant, conceding he could not present a *Franks* preliminary showing of material misstatements or omissions in the warrant affidavit to trigger a hearing on the veracity of the affiant, moved instead for discovery of police records relating to the confidential informants upon whom the affiant relied. The trial court denied the motion, and defendant was convicted of possession of cocaine for sale.

The Court of Appeal affirmed, rejecting *Rivas, supra,* 170 Cal.App.3d 312. Because the defendant's purpose was to challenge the warrant, and, if successful, seek suppression of evidence, the court stated section 28(d) required it to follow federal constitutional standards rather than state law. (*Crabb, supra,* 191 Cal.App.3d at p. 392.) Accordingly, it concluded *Rivas*'s "approval of unfettered police record discovery" did "not square with the Supreme Court's mandate in *Franks* v. *Delaware*." (*Id.*, at p. 395.) It viewed the defendant's discovery motion as "a random search for evidence that the

affiant might have misstated or omitted facts which might then have cast doubt upon the affiant's veracity. Under the essential rationale of *Franks*, such discovery is not permissible under these circumstances." (*Ibid.*) ■■ ■■■■ The court explained that the premise of *Franks, supra,* 438 U.S. 154, was that "the magistrate's acceptance of the affiant's veracity is not to be disturbed, and further judicial inquiry into the subject is not warranted, unless the defendant first shows some reason to believe the affiant has willfully misstated or omitted[4] material facts from the affidavit." (191 Cal.App.3d at p. 396.) The *Crabb* court stated the defendant had not made any such showing, so the "substantial commitment of scarce judicial resources" necessary for in camera screenings was not justified. (*Ibid.*)

A third published Court of Appeal opinion addressing the discovery issue in turn rejected *Crabb, supra,* 191 Cal.App.3d 390. (*People* v. *Broome* (1988) 201 Cal.App.3d 1479 [247 Cal.Rptr. 854].)[5] In *Broome*, the district attorney refused to comply with an order to produce certain evidence (a sample of a substance alleged to be methamphetamine, purchased from defendant in a "controlled buy") on the ground that the order was improper because the discovery was sought to gain evidence for a *Franks* veracity challenge, and the defendant had not satisfied the *Franks* threshold showing. The trial court ordered the information dismissed because the People failed to comply with the discovery order. The Court of Appeal affirmed, concluding the trial court had acted within its discretion in ordering the discovery.

The *Broome* court stated, "we find absolutely no basis for the People's telescoped analysis which concludes the *Franks* standard of a 'preliminary substantial showing' must be grafted on the California law of discovery." (201 Cal.App.3d at p. 1491.) It rejected the notion that section 28(d) required different, stricter standards for motions for discovery sought in the context of attacking a search warrant. "Discovery is a collateral matter by which a defendant gathers facts." (201 Cal.App.3d at pp. 1491-1492.)

*Broome* explained that although section 28(d) requires California courts to follow federal law regarding suppression of evidence, it "only applies to exclusionary rules—rules which exclude relevant evidence from

---

[4] The *Crabb* court stated that for purposes of the issues presented, it would treat a claim of material omissions similarly to the *Franks*-type problem of material misstatements. (191 Cal.App.3d at p. 393, fn. 3; see *People* v. *Kurland, supra,* 28 Cal.3d 376, 384.) This treatment is acceptable. (Accord, *People* v. *Truer, supra,* 168 Cal.App.3d 437.)

[5] The *Broome* court did not disapprove of the result in *Crabb*, noting the affidavit in *Crabb* already contained information regarding the drug use and prior-informant status of the informants, so the discovery request sought merely cumulative data and its denial by the trial court was within the court's discretion.

admission." (201 Cal.App.3d at p. 1492.) In other words, section 28(d) does not dictate the preliminary showing required to obtain discovery.

Turning specifically to *Franks, supra,* 438 U.S. 154, the *Broome* court stated, "There is nothing in *Franks* itself which would indicate the holding is to be applied as a threshold to obtaining discovery . . . . The court . . . was concerned about preventing traversals used for general discovery, not limiting discovery for the purpose of gathering facts for an initial traversal showing. Nor do we think the United States Supreme Court could have intended a result which would make this announced right unobtainable. As the People would have it, the catch-22 predicament[6] . . . would apply here to defeat any effort by the defendant to obtain a hearing, since he could rarely make anything other than a conclusory statement about inaccuracies in the affidavit (and thus never be entitled to a hearing) if he is not allowed access to matters within the prosecution's control without more than a necessarily conclusory statement as to his need for the data." (201 Cal.App.3d at pp. 1493-1494.)

In the matter before us, the Court of Appeal's reasoning was similar to that of *Broome, supra,* 201 Cal.App.3d 1479. It concluded, "[T]here is no conflict between *Rivas* and *Franks. Franks* said nothing about the right to discover evidence essential to the 'substantial preliminary showing' required for an evidentiary hearing on the validity of a search warrant affidavit. *Rivas* simply mandates a discovery procedure." Federal law governs the determination whether the evidence will be suppressed. Thus, "[d]iscovery under *Rivas* can only benefit the defendant by leading to the exclusion of evidence under federal law, and [section 28(d)] is not violated by such exclusion." The court further opined that section 28(d) "did not preclude California courts from prescribing supplementary procedures for application of the federal standards of admissibility."

B. *Criminal defendant's right to limited discovery.*

1. *State law governs criminal discovery*

 In resolving this conflict among Court of Appeal decisions, we first reject the argument that section 28(d) mandates use of the *Franks (supra,* 438 U.S. 154) preliminary-showing standard for discovery. Section 28(d) requires application of federal exclusionary rules to determine the admissibility of illegally obtained evidence. (*People* v. *May* (1988) 44 Cal.3d 309

---

[6] In making a discovery motion, the defendant obviously is not expected to know precisely what he will find. As the *Broome* court put it, "There is no requirement the defendant will actually find that which he hopes to find; otherwise he would be put in the catch-22 position of being required to prove that which he is attempting to prove." (201 Cal.App.3d at p. 1489.)

[243 Cal.Rptr. 369, 748 P.2d 307]; *Lance W., supra,* 37 Cal.3d 873.) It does not touch on discovery procedures. As pointed out by the Court of Appeal in *Broome, supra,* 201 Cal.App.3d 1479, and this case, the fact that the discovery at issue may yield information to support a challenge to the affidavit and an eventual motion to suppress the evidence obtained under the warrant does not mean that the discovery is therefore also governed exclusively by federal principles. Section 28(d) did not "federalize" our state criminal discovery procedures.

■ A criminal defendant's right to discovery, as this court most recently explained in *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222], "is based on the 'fundamental proposition that [an accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.'" (*Id.,* at p. 84 [quoting *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 (113 Cal.Rptr. 897, 522 P.2d 305)].) Permitting a defendant limited but reasonable access to information relevant to evaluating the validity of a search warrant appears consistent with this basic principle. (See also *Holman* v. *Superior Court* (1981) 29 Cal.3d 480, 485-486 174 Cal.Rptr. 506, 629 P.2d 14] [holding "reasonable, limited" discovery available to defendant before preliminary examination, in discretion of magistrate, on showing it is "reasonably necessary" to prepare defense, and will not cause undue delay].)

2. *The rules of Franks and Rivas do not conflict*

Although section 28(d) does not require us to adopt the *Franks* (*supra,* 438 U.S. 154) substantial-preliminary-showing standard for purposes of discovery, we may still seek guidance in the Supreme Court's *Franks* analysis. ■ Thus, we consider whether, as argued by the People, *Rivas*-type discovery is inconsistent with the underlying principles of *Franks, supra,* 438 U.S. 154.

First, as explained above, we reject the reasoning by which the People, relying on *Crabb, supra,* 191 Cal.App.3d 390, attempt to take the *Franks* standard (*supra,* 438 U.S. 154), formulated by the Supreme Court for the specific purpose of establishing a defendant's right to an *evidentiary hearing* on the veracity of a search warrant affidavit, and impose it on the discovery process. *Franks* did not restrict, either explicitly or implicitly, a defendant's right to discovery *prior* to the evidentiary veracity hearing. The requirement of a substantial preliminary showing was intended in part to avoid misuse of the evidentiary hearing for purposes of discovery. But it should not be applied to preclude all meaningful opportunity for a defendant to challenge a warrant on veracity grounds. The purpose of *Franks* was "to provide meaningful, albeit limited, deterrence of and protection against perjurious

warrant applications." (*People* v. *Lucente* (1987) 116 Ill.2d 133 [506 N.E.2d 1269, 1276].)

Because *Franks, supra,* 438 U.S. 154, was not a confidential informant case, it did not reach the issue of how a defendant could amass the required preliminary showing of material misrepresentations when faced with a confidential informant. Without access to information regarding an unidentified informant, a defendant would be seriously handicapped in his attempt to obtain an evidentiary hearing. We do not believe that by its formulation of the preliminary showing, the *Franks* court intended effectively to bar challenges to warrant affidavits based on confidential informants' tips.

Other courts have recognized that in confidential informant cases, the *Franks* standard must not be applied to preclude all possibility of a veracity challenge. For example, in *People* v. *Lucente, supra,* 506 N.E.2d 1269, the Illinois Supreme Court approved the holding of an evidentiary hearing, based on the defendant's preliminary showing of alibi which pointed to some inaccuracy in the affidavit but did not establish that the inaccuracy originated in misstatements by the affiant rather than lies by the informant. The court rejected the state's argument that the preliminary showing must negate the possibility that the informant lied to the officer. The court stated: "If such a preliminary showing were demanded, no hearing could ever result in cases in which all the information to establish probable cause came from an unnamed informant. One need not be overly cynical to realize that such a rule would enable the police to insulate perjury from discovery by the simple expedient of a fabricated informant, and thereafter 'remain confident that the ploy was worthwhile.' (*Franks* [*supra,* 438 U.S. at p. 168 (57 L.Ed.2d at p. 680).])" (*Lucente, supra,* 506 N.E.2d at p. 1275; see also *State* v. *Casal* (1985) 103 Wn.2d 812 [699 P.2d 1234].)

In addition, we note that allowing limited discovery in confidential informant cases may even reduce the number of motions for *Franks* veracity hearings. Once a defendant obtains the type of information here requested, or learns that no helpful information exists, he may very well decide, on the basis of all the facts, that he has no grounds for a *Franks* motion. Thus, preliminary discovery may, in some cases, eliminate the need for a full evidentiary *Franks* hearing.

We conclude, in sum, the in camera review and discovery procedure approved in *Rivas* (170 Cal.App.3d 312), rather than conflicting with the limited right under *Franks* (438 U.S. 154) to traverse a warrant affidavit, appears instead to complement and implement *Franks*. Thus, neither section 28(d) nor *Franks* itself requires a defendant to meet the *Franks* preliminary-showing standard before obtaining limited discovery relevant to the

truthfulness of the warrant affidavit. To avoid improperly intruding on confidential police records, or unduly burdening trial courts with in camera proceedings, however, we will require a more substantial threshold showing than was adduced in this case. As explained below, we derive the appropriate preliminary showing standard from established principles of criminal discovery.

### 3. *In camera proceedings*

We agree generally with *Rivas*'s endorsement of in camera screening. In camera proceedings can effectively protect the government's confidentiality interests while safeguarding the defendant's rights and the integrity of the warrant issuing process. (See 1 LaFave, *op. cit. supra* (2d ed. 1987) § 3.3(g), pp. 709-711.) In cases such as this one, in which the police rely on confidential informants, the state has a strong and legitimate interest in protecting the informant's identity. As we have seen, however, a defendant possesses a limited but viable constitutional right to attempt to controvert the veracity of statements made in the affidavit. To exercise that right, the defendant requires information indicating the material falsity of the affidavit. A *Rivas*-type in camera screening of documents can accommodate the competing interests of state and defendant, while protecting the informant's identity.

In several other contexts, our Legislature recognizes the usefulness of in camera proceedings to protect confidential and privileged information while preserving defendants' rights. (See, e.g., Evid. Code, §§ 1042, subd. (d) [requiring in camera hearing, at prosecutor's request, to determine whether confidential informant's identity should be revealed on ground informant is material witness on guilt], 1045, subd. (b) [requiring in camera review and screening of police personnel records before production to criminal defendant]; see § 915, subd. (b) [authorizing in camera hearing to determine whether information is privileged].)

The in camera document screening and production of discovery relating to a confidential informant, as mandated in *Rivas, supra,* 170 Cal.App.3d 312, is not a widely used procedure. Several courts, however, have approved and encouraged in camera hearings relating to subfacial warrant challenges in order to protect the identity of confidential informants. For example, in *State* v. *Casal, supra,* 699 P.2d at page 1238, the court recognized that a defendant faced with a warrant affidavit relying on a confidential informant was *unable* to make a *Franks (supra,* 438 U.S. 154) "substantial preliminary showing." The court held that in such a case, a veracity hearing was justified on a somewhat lesser showing of inaccuracy or inconsistency, but that in order to protect the informant's identity, the hearing should be held in

camera. (See also *People* v. *Brown* (1989) 207 Cal.App.3d 1541 [256 Cal.Rptr. 11] [affirming trial court's denial of open evidentiary hearing following in camera examination of confidential informants]; *People* v. *Dailey* (Colo. 1982) 639 P.2d 1068, 1077, fn. 11 [affirming trial court's order requiring disclosure of informant's identity, but approving use of in camera hearings as a "valuable" alternative to protect informant's identity]; *Commonwealth* v. *Douzanis* (1981) 384 Mass. 434 [425 N.E.2d 326, 328, fn. 4] [recommending in camera disclosure of certain information to court for determination whether disclosure to defendant would reveal informant's identity]; *United States* v. *Kiser* (9th Cir. 1983) 716 F.2d 1268, 1273 [*after* defendant provided substantial preliminary showing as to confidential informant's identity and misrepresentations in warrant affidavit, court should hold in camera hearing to determine informant's identity and whether an open *Franks* evidentiary hearing warranted]; *United States* v. *Moore* (9th Cir. 1975) 522 F.2d 1068, 1072-1073; *United States* v. *Brian* (D.R.I. 1981) 507 F.Supp. 761, 766.) Many of these cases contemplate calling the affiant or the informant himself for questioning by the court. The *Rivas* procedure, calling only for in camera examination of the documents defendant seeks, to allow the court to determine materiality and delete information that might identify the informant, may impose a lesser burden on trial courts than such an in camera evidentiary hearing.

### 4. *Required preliminary showing*

We disagree with *Rivas*, however, to the extent that it mandates an in camera hearing and discovery based on nothing more than a conclusory assertion of need for the discovery. In *Rivas*, the defendant simply argued he needed certain materials in order to obtain a hearing on a motion to challenge the veracity of the affidavit on which the warrant was based. (170 Cal.App.3d at p. 318.) The court held the defendant was entitled to discovery, based on his general "conclusionary" assertions. (*Id.*, at pp. 321, 322.) Holding that a defendant is entitled to in camera inspection and discovery of police records based on an unsupported request for all relevant background of the confidential informant would impose an unjustifiable burden on our trial courts and an unwarranted invasion of police files.

■ To obtain discovery of protected information such as police files, a criminal defendant must make some preliminary showing "other than a mere desire for all information in the possession of the prosecution." (*Santa Cruz, supra,* 49 Cal.3d at p. 85.) "A defendant's motion for discovery must . . . describe the requested information with at least some degree of specificity and must be sustained by plausible justification." (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) The request must be "with adequate specificity to

preclude the possibility that defendant is engaging in a 'fishing expedition.' " (*Santa Cruz, supra,* 49 Cal.3d at p. 85 [quoting *Pitchess, supra,* 11 Cal.3d at p. 538].) And "[e]ven upon a showing of good cause, . . . the right of an accused to obtain discovery is not absolute." (*Pitchess, supra,* 11 Cal.3d at p. 538.) "[T]he court retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest." (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 804 [91 Cal.Rptr. 594, 478 P.2d 26].) This may be particularly true when the information sought is not directly related to the issue of a defendant's guilt or innocence. (E.g., *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 820 [112 Cal.Rptr. 257, 518 P.2d 1353, 95 A.L.R.3d 820] [trial court retains discretion to grant or deny motion for discovery of prosecution witness's felony conviction record].)

Further, it bears emphasizing that the warrant affidavit is *presumed* truthful. "As stated in *Franks,* there is a presumption that the officer who relies on an informant reports valid information and relies on his source in good faith." (*Kiser, supra,* 716 F.2d at p. 1271 [citing *Franks, supra,* 438 U.S. at p. 171 (57 L.Ed.2d at p. 682)].) Therefore we find the *Rivas* court (*supra,* 170 Cal.App.3d 312) erred to the extent it held a defendant entitled to discovery, following an in camera screening, for purposes of challenging a warrant affidavit whenever the police affiant cites information from a confidential informant. A defendant is not entitled to require the trial court to examine the documents in question, and to expurgate and produce them, absent some showing that the presumptively valid warrant affidavit is questionable in some way.

We recognize, however, that it may be difficult for a defendant to prove police misrepresentations without discovery when a warrant affidavit is based on statements of an unidentified informant. In light of the protection of informant confidentiality afforded by the in camera proceeding, we adopt a preliminary-showing requirement, for purposes of discovery motions in such cases, that is somewhat less demanding than the "substantial showing of material falsity" required by *Franks, supra,* 438 U.S. 154. ▮ The decision whether to convene an in camera examination or to order discovery will remain a matter within the trial court's discretion. (See *Hill* v. *Superior Court, supra,* 10 Cal.3d at p. 820; *Broome, supra,* 201 Cal.App.3d at pp. 1488-1489.) In making those determinations, the trial courts should be guided by the following principles.

To justify in camera review and discovery, preliminary to a subfacial challenge to a search warrant, a defendant must offer evidence casting some reasonable doubt on the veracity of material statements made by the affiant. (Cf. *State* v. *Casal, supra,* 699 P.2d at p. 1239 [showing required for in

camera examination of affiant and/or confidential informant based on defendant's challenging existence of informant or veracity of affiant].) This standard is similar to those set by courts of other jurisdictions addressing analogous questions. (E.g., *People* v. *Poindexter* (1979) 90 Mich.App. 599 [282 N.W.2d 411, 416] [when defendant makes specific allegations of deliberate or reckless falsehood, with offer of proof, trial court has discretion to examine informant in camera, once defendant has "raised a legitimate question" regarding the existence of an informant or the truth of affiant's statements and the court determines there is "some doubt" as to affiant officer's credibility]; *United States* v. *Brian, supra,* 507 F.Supp. at p. 766 [for *Franks* challenge in confidential informant case "where defendants deny, via affidavit, specific facts attributed to them by informants; and where defendants make some minimal showing of inconsistency on the face of the government's material which supports their assertion of deliberate falsehood or reckless disregard for the truth, the Court may, and probably should, conduct an *in camera* interview of the affiant and, if necessary, of the informants"].) Thus, before an in camera review may be ordered, the defendant must raise some reasonable doubt regarding either the existence of the informant or the truthfulness of the affiant's report concerning the informant's prior reliability or the information he furnished. (Cf. *Rivas, supra,* 170 Cal.App.3d at p. 322; *State* v. *Haywood* (1984) 38 Wn.App. 117 [684 P.2d 1337, 1341].)

As with a request for a *Franks* hearing (*supra,* 438 U.S. 154), the motion for *Rivas*-style discovery (*supra,* 170 Cal.App.3d 312) should include affidavits supporting defendant's assertions of misstatements or omissions in the warrant affidavit. Further, a defendant should, if possible, specify the information he seeks, the basis for his belief the information exists, and the purpose for which he seeks it. Although it is true that in cases involving confidential informants the defendant may be hindered in providing such specifics, we emphasize that a "conclusionary" statement that he needs the information will not suffice to entitle him to obtain an in camera hearing and portions of the police background materials on the confidential informant.

Here, for instance, although defendant did not know what the informant had told the affiant, or whether the informant had previously proved "reliable," his ignorance of the informant's identity should not have prevented him from making more substantial factual assertions casting doubt on the accuracy of the affiant's statements. For example, without knowing the informant's identity, a defendant could nonetheless make factual allegations contradicting statements in the warrant affidavit, or raise inconsistencies on the face of the affidavit. (See, e.g., *People* v. *Brown, supra,* 207 Cal.App.3d 1541, 1545-1546 [defense investigator's affidavit contradicted warrant

affidavit as to suspected confidential citizen informant's ability to identify contraband]; *Broome, supra,* 201 Cal.App.3d at pp. 1495-1497 [alternative holding that defendant made sufficient showing under modified *Franks* standard, based on affidavits of defendants and others denying that controlled buy occurred and supporting defendant's alibi during alleged time of controlled buy, and based on testimony of affiant at preliminary hearing]; cf. *Lucente, supra,* 506 N.E.2d 1269 [detailed affidavits contradicting warrant affidavit by supporting defendant's alibi warranted evidentiary veracity hearing]; *Kiser, supra,* 716 F.2d at p. 1273 [offer of proof sufficient to satisfy *Franks* "substantial preliminary showing" where defendant filed lengthy affidavit of person he believed was confidential informant, which contradicted affiant's statements in warrant affidavit].)

For purposes of obtaining discovery, a defendant need not show that the alleged inaccuracies of the affidavit resulted from the affiant's bad faith. Under *Franks*, before a defendant is entitled to an evidentiary veracity hearing, he must make a substantial showing that the affiant made false statements "knowingly and intentionally or with reckless disregard for the truth." (438 U.S. at p. 155 [57 L.Ed.2d at p. 672].) For present discovery purposes, casting a reasonable doubt on the truthfulness of statements made in the affidavit will suffice, regardless of the defendant's ability to show bad faith or trace the inaccuracy directly to misrepresentations by the affiant.

To obtain an in camera hearing, however, the defendant must raise a substantial possibility that the allegedly untrue statements were material to the probable cause determination. Pursuant to section 28(d), materiality is evaluated by the test of *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], which looks to the totality of the circumstances in determining whether a warrant affidavit establishes good cause for a search. (*People* v. *Gesner* (1988) 202 Cal.App.3d 581, 590 [248 Cal.Rptr. 324].) After its in camera examination of the materials requested by the defendant, the court may then order production of only those documents that are relevant to the material inaccuracies asserted by the defendant.

Materiality will depend in part on how vital the information attributed to the unnamed sources is to a showing of probable cause. (See *United States* v. *Brian, supra,* 507 F.Supp. 761, 766 [approving in camera interview of affiant and informants, on "minimal showing" because the government's primary reliance on confidential informants means "defendants lack the very information that *Franks* requires for a threshold showing"].) The more detailed corroborative facts the affidavit provides, the less material any inaccuracy relating to the informant's reliability or the informant's statements may become. If the information allegedly omitted or misstated is merely cumulative, it is not material. (*People* v. *Kurland, supra,* 28 Cal.3d 376, 394

[omission from affidavit of details regarding informant's criminal past was immaterial, because status as police informant itself indicated lack of reliability]; *People* v. *Rochen* (1988) 203 Cal.App.3d 684, 689-690 [250 Cal.Rptr. 73].)

■ Once this preliminary showing is made, the trial court should determine, in its in camera examination of the police records specified by the defendant, whether the defendant's allegations of material misrepresentations or omissions are supported by the requested materials. If the trial court decides the documents do not support defendant's charges of misrepresentation, the court should report only this conclusion to the defendant, and should not order production of any of the reviewed materials. (Cf. Evid. Code, § 1042, subd. (d) [if court determines in camera there is no reasonable possibility that nondisclosure of confidential informant's identity might deprive defendant of fair trial, it shall not order disclosure but simply report its finding]; see *People* v. *Brown, supra,* 207 Cal.App.3d 1541 [after determining in an in camera hearing that warrant affidavit was not materially false, court properly denied evidentiary hearing and motion to quash warrant]; *State* v. *Casal, supra,* 699 P.2d at pp. 1239-1240 [mandating in camera hearing, after preliminary showing satisfied, to examine confidential informant; if judge so decides defendant may be informed only that his allegations of falsity of affidavit were not proved, or that probable cause did exist].) This procedure will assure the defendant of a judicial check on possible police misrepresentations, while preventing both unfounded fishing expeditions and inadvertent revelations of the identity of confidential police informants.

If, on the other hand, the court finds the requested documents contain information that tends to contradict material representations made in the affidavit, or constitutes material omissions from it, then it should order disclosure of the documents to the defendant. Before doing so, the court must of course excise all information that could reveal the informant's identity. In light of the absolute privilege protecting the informant's identity when the informant's tip goes only to probable cause (Evid. Code, § 1042, subd. (b)), this excision must be very carefully done, to avoid any chance of unintentionally revealing any identifying evidence to the defendant. The excised portions of the materials should be preserved for purposes of appellate review. (Cf. *In re Waltreus* (1965) 62 Cal.2d 218, 223-224 [42 Cal.Rptr. 9, 397 P.2d 1001] [similar procedure mandated for excising from statements of prosecution witnesses matters unrelated to defendant's case].)

### DISPOSITION

■ On the record before us, the trial court did not abuse its discretion in denying defendant's motion for in camera review and discovery. Defend-

ant's motion was based entirely on conclusory assertions, unsupported by affidavits,[7] and he failed to raise any doubt regarding the truthfulness of the warrant affidavit. We therefore reverse the Court of Appeal's judgment, with orders to vacate the dismissal of the information, and remand to the trial court for further proceedings consistent with this opinion.

Panelli, J., Eagleson, J., and Kennard, J., concurred.

KAUFMAN, J., Concurring.—In deciding on a rule of practice, it is appropriate to keep in mind the purpose to be served by the proposed rule and the history of the legal problem involved. Here, the discovery sought is not for purposes of substantive defense but solely to discover whether there might be a possibility of traversing the affidavit supporting the search warrant.

Thus, the need for the discovery sought here is far less compelling than discovery directly relating to guilt or innocence. (See *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222].) Even if the requested discovery were to reveal some basis for believing the statement concerning the informant's reliability was false or incorrect, the defendant would still have to demonstrate the inaccuracy or falsity was material to the issuance of the warrant by the magistrate.

In light of the foregoing, I agree with the analysis and formulations in the majority opinion. What makes the application of the majority's formulations somewhat dissatisfying in this case is that defendant would be required to cast reasonable doubt on the veracity of a statement which contains virtually no facts to controvert, only the conclusion of the affiant. The only statement in the affidavit relating to the informant reads in its entirety: "Within the past ten days, I met with an informant who has, in the recent past, given me information about drug dealers which later proved to be reliable."

I agree with the dissenting opinion that it would be almost impossible for anyone to cast reasonable doubt on the veracity of this conclusional statement. But the remedy for this problem is not to require less from the defendant seeking discovery but, rather, to require more factual data to be included in the affidavit to support the showing of the informant's reliability, so that the magistrate is not required to rely on the affiant's conclusions

---

[7] The motion was supported only by defense counsel's brief declaration stating that "[a] reasonable possibility exists that the confidential informant used by the police could give testimony which would exonerate the defendant . . . ." This statement does not pertain to the discovery request, but seems instead to be an attempt to support a motion to disclose the informant's identity under Evidence Code section 1042, subdivision (d).

or opinion as to the informant's reliability and so a challenging defendant would have some facts to controvert.

In the case at bench, however, the sufficiency of the affidavit on its face to establish the reliability of the informant was apparently never challenged by an appropriate motion. Had it been, I would hold it insufficient and disapprove any decisions to the contrary.

**MOSK, J.**—I dissent.

The majority opinion rightly concludes that matters of criminal discovery do not fall within the scope of the Proposition 8 mandate that California law on the exclusion of evidence not exceed federal constitutional protections. The majority further conclude correctly that even if Proposition 8 did apply, the liberal rule for discovering information about confidential informants announced in *People* v. *Rivas* (1985) 170 Cal.App.3d 312 [216 Cal.Rptr. 477], does not conflict with the standards for obtaining an evidentiary hearing to challenge a warrant set forth in *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]. But the majority's modification of *Rivas*, particularly its proposed requirement of a showing of "reasonable doubt" by defendants, is unsupported by our previous holdings and is unrealistic in its view of a criminal defendant's ability to make that showing.

The majority basically approve of the *Rivas* procedure, which allows the defendant to discover information in police files on confidential informants after the court prescreens the requested documents to edit out the informant's identity. In order to obtain discovery, however, the majority would now have the defendant make a substantial three-step preliminary showing: (1) the defendant must shoulder the burden of casting "reasonable doubt" on the veracity of statements made by the affiant; (2) the defendant must specify "if possible" the basis of his belief that the information exists and the purpose for which he seeks it; and (3) he must raise a substantial possibility that the allegedly untrue statements were material to the probable cause determinations. (Maj. opn., *ante*, at pp. 22-23.) The majority would also place an additional barrier between the defendant and the information to be discovered: the court must satisfy itself that the requested documents support the defendant's allegations of material omission or misrepresentation, and only then turn the documents over to the defendant.

The majority's rationale for these new requirements is ill defined. The opinion declares that to allow discovery based on "conclusory" statements of police misrepresentation "would impose an unjustifiable burden on our trial courts and an unwarranted invasion of police files." (Maj. opn., *ante*, at

p. 20.) The showing is said to be needed to prevent the defendant from embarking on a "fishing expedition." (*Id.* at p. 21.) The opinion also reiterates language in *Franks, supra,* 438 U.S. 154, that a warrant is presumed to be true. As discussed below, in my view none of these concerns justifies the proposed new requirements.

We have held that discovery will be allowed to a criminal defendant who can demonstrate that "the requested information will facilitate the ascertainment of the facts and a fair trial." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536 [113 Cal.Rptr. 897, 522 P.2d 305].) Criminal discovery can take the form of "general allegations which establish some cause for discovery," provided that the requests have sufficient specificity to constitute something more than a "fishing expedition." (*Id.* at pp. 537-538.)

We recently reaffirmed the broad scope of criminal discovery in *City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222]. That case interpreted Evidence Code sections 1043 to 1045, part of the statutory scheme that codified *Pitchess.* We held that a defendant charged with resisting arrest may discover police records regarding the use of excessive force by the arresting officers on the basis of an affidavit alleging on information and belief that the officers had used excessive force in the past. In so holding, we rejected the requirement of the Court of Appeal in that case that the affidavit supporting the request be based solely on personal knowledge. *City of Santa Cruz* recognized the dilemma inherent in requiring too detailed a showing as a prerequisite to discovery, quoting from the legislative history of Evidence Code section 1043: " 'The purpose of discovery is to find detail. If the petitioner already had the particulars of the records he would not need to use discovery.' " (*City of Santa Cruz, supra,* 49 Cal.3d at p. 89, italics deleted.)

This "Catch-22" predicament of requiring a substantial showing as a preliminary to discovery has been underscored by other courts, which observe that the defendant is placed in the position of "being required to prove that which he is attempting to prove." (*People* v. *Broome* (1988) 201 Cal.App.3d 1479, 1489 [247 Cal.Rptr. 854].) "[W]hen an affidavit relies for its assertion of probable cause upon facts attributed to *confidential* informants, defendants have no way to obtain the very information they need to assert their entitlement to a *Franks* hearing." (*United States* v. *Brian* (D.R.I. 1981) 507 F.Supp. 761, 765.) Both *Broome* and *Brian* permitted discovery or in camera examination of the informant on "general allegations" of police misconduct. (*Broome, supra,* at p. 1489, italics deleted; see *Brian, supra,* at p. 766.) The majority are sensitive to these difficulties and for that reason rejects the position that a "substantial showing of material falsity" required for a *Franks* hearing should be employed at the discovery

stage. (Maj. opn., *ante,* at p. 21.) The majority also reject the *Franks* requirement that the statements of the affiant be shown to be in bad faith. (*Id.* at p. 23.) Yet the "reasonable doubt" standard is hardly more capable of addressing the dilemma. This point can be illustrated by trying to imagine how a defendant would meet the reasonable doubt standard.

The majority contemplate a defendant raising a reasonable doubt concerning the affiant's veracity by pointing to factual inaccuracies on the face of the warrant or inconsistencies on the face of the affidavit. (Maj. opn., *ante,* at p. 22.) But this suggestion fails to come to grips with the grim reality of possible police inaccuracy, exaggeration or even falsehood. Neither of the two devices will be effective when a law enforcement officer, in misguided pursuit of a conviction, is committed to a course of fabrication as to either the existence or the communications of an informant. In such cases, the officer would be tempted to make the alleged informant's tip consistent with the "corroborating" information. (See 1 LaFave, Search and Seizure (2d ed. 1987) pp. 706-707.) Although police falsehood is certainly not widespread, it is on rare occasions part of that overzealousness in pursuit of worthy ends that the Fourth Amendment is designed to curb. (See Grano, *A Dilemma for Defense Counsel: Spinelli-Harris Search Warrants and the Possibility of Police Perjury,* 1971 U.Ill.L.F. 405, 409-410 [anecdotal and other evidence uncovered after a year of observation that officers' perjury is not uncommon to save a case].)

Given the reality that a warrant and affidavit may be facially consistent and factually correct yet still harbor material falsity about the confidential informant on whom the warrant is assertedly based, the defendant is placed in an untenable position. This is especially true when, as here, the affidavit asserts the informant's reliability in a conclusory fashion.

Nor are any of the majority's justifications for the "reasonable doubt" standard persuasive. The majority is concerned with preserving the court's discretion to protect the confidentiality of the informant, but a *Rivas* procedure (*supra,* 170 Cal.App.3d 312) already does this. If the trial court believes that disclosure of the informant's identity is likely to occur despite prescreening, it is within the court's discretion to limit or deny the discovery request. In short, the majority seek to make disclosure of the informant's identity through discovery a rarer event by making discovery itself less frequent. But given the prescreening and additional discretion that exists at the trial level, this kind of broad prophylactic measure is unnecessary.

The majority also make the point that a warrant under *Franks, supra,* 438 U.S. 154, is presumed to be truthful, but *Franks* does not hold that the

presumption of truthfulness should go untested by denying discovery. The "substantial showing" requirement in *Franks* is designed to filter out unmeritorious challenges to a warrant's veracity. To place yet another filter at the discovery stage may disallow a number of meritorious claims as well, making it nearly impossible for some defendants to amass evidence sufficient to make a *Franks* showing.

Moreover, in terms of judicial efficiency the majority's proposed standard turns *Franks* on its head. *Franks* sought to prevent the unnecessary use of a costly procedure—the evidentiary hearing—by substituting when possible a less costly proceeding—the requirement of a substantial showing. On the other hand the majority seek to substitute a *less* costly procedure—the grant of discovery on a minimal showing—with a *more* costly procedure—a hearing to determine whether reasonable doubt and materiality standards have been satisfied. Concern for the trial court's burden is not addressed by imposing rigorous standards for discovery which may themselves become the subject of additional litigation.

Finally, the majority's unspecified concerns about a "fishing expedition" hardly seem warranted. Here the defendant requested in camera review of "any information disclosed or discoverable . . . as to the informant's past experiences with dangerous drugs, any police reports of incidents [filed] against [informant], pay vouchers, if there were any, for [informant's] services to the police department, any [promises or] representations . . . that were made to him." The requests were specifically described and narrow in scope. As long as materiality and specificity are required of discovery requests, as here, a defendant can be prevented from engaging in the overbroad discovery that might give him access to everything in the prosecutor's file. (See *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416] [defendant's discovery request must be made with "some degree of specificity" and with "plausible justification"].)

In sum, the proposed new "reasonable doubt" standard for the discovery showing should be rejected, in favor of the widely accepted test based on " 'general allegations which give some cause for discovery . . . .' " (*Broome, supra,* 201 Cal.App.3d 1479, 1489, italics deleted, quoting *Pitchess, supra,* 11 Cal.3d 531, 537), or a standard based on information and belief (*City of Santa Cruz, supra,* 49 Cal.3d 74, 94). As long as the discovery requests are adequately specific and material to the issue of probable cause, the defendant should be permitted to discover information on police informants. *Rivas* screening will adequately balance the needs of law enforcement and prosecutors to maintain the identity of confidential informants with the needs of defendants to obtain information that will enable them to

mount an effective defense and vindicate their Fourth Amendment rights. We should encourage every effort to ascertain the whole truth, rather than to approve efforts to conceal part of the truth.

I would affirm the judgment of the Court of Appeal.

Broussard, J., concurred.